UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Roz Saedi, on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:24-cv-11299 |
| v. ) ) | Jury Trial Demanded |
| Nested Bean, Inc., ) ) | |
| Defendant. ) ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Roz Saedi ("Plaintiff"), individually and on behalf of all others similarly situated,

hereby brings this Class Action Complaint against Defendant Nested Bean, Inc., and, in support

thereof, alleges as follows:

**INTRODUCTION**

1.     Defendant manufactures, markets, and sells weighted sleep products for children,

including, but not limited to, weighted sleep sacks such as the Zen Sack, Zen Sack Classic, Zen

Sack Winter, Zen Sack Premier, and Zen Sack Quilted, and weighted swaddles such as the Zen

Neo and the Zen Swaddle Classic ("Weighted Sleep Products"). Defendant touts their products

as "[s]cientifically designed for self-soothing and sounder sleep." The problem is that there is no

scientific evidence that these products help children sleep. Defendant also markets its products

as "[t]he safe alternative to all-weighted sleepwear," when in fact the scientific consensus is that

these products are inherently dangerous.

2.     The American Academy of Pediatrics ("AAP") has, on multiple occasions,

warned against the use of weighted blankets, sleepers, or swaddles on children. In its 2022

Recommendations for Reducing Infant Deaths in the Sleep Environment, the AAP wrote: "It is recommended that weighted blankets, weighted sleepers, weighted swaddles, or other weighted objects not be placed on or near the sleeping infant." In 2023, it wrote the U.S. Consumer Product Safety Commission ("CPSC") and was even more explicit: "The AAP believes these weighted swaddles and related blankets are unsafe for infants and does not recommend these products." The AAP noted that these products are associated with "concerning reductions in oxygen saturation levels in infants…which if sustained, may be harmful to the developing infant's brain."

3.      The AAP is joined by numerous other scientific organizations in finding these products are unsafe for children. The Center for Disease Control and Prevention writes: "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants." The National Institute of Health agrees, finding that "[t]hings in the sleep area can pose dangers for baby, especially if they are…Weighted (e.g., weighted blankets, weighted swaddles.)"

4.      This overwhelming scientific consensus caught the attention of the CPSC, who recently wrote to numerous retailers stating that it was "aware of **multiple infant deaths** involving weighted infant sleep sacks." (emphasis original). In a statement last month, CPSC Commissioner Richard L. Trumka Jr. wrote: "I've sat with parents of a child who died in one of these products, and I carry their grief with me. I share their desire to make sure that no one else suffers the fate that their family did."

5.      Despite the overwhelming consensus that its products are unsafe, and no scientific evidence that Weighted Sleep Products help children sleep more soundly, Defendant continues to deceptively and unlawfully market its products as safe and effective. In the words of a United States Senator, Defendant "continue[s] selling these products to vulnerable and unsuspecting

parents who are sleep-deprived, stressed and desperate for help, all while lacking reputable research to back the safety of these items."

6.      No reasonable consumer would purchase Defendant's Weighted Sleep Products if they knew that these products are unsafe and should not be used with children, nor would they purchase the Weighted Sleep Products if they knew that there was no evidence the products helped children sleep more soundly.

7.      In other words, Defendant uses deceptive and unfair tactics to sell millions of dollars' worth of its wholly useless Weighted Sleep Products which are not proven to provide the benefits that Defendant market. Worse, Defendant reaps these profits while omitting from its marketing that these products are dangerous and should not be used.

8.      Accordingly, Plaintiff brings this class action individually and on behalf of a class of similarly situated consumers (defined below) to redress the economic harm caused by Defendant's sale of its dangerous and ineffective Weighted Sleep Products.

**PARTIES**

9.      Plaintiff Roz Saedi is domiciled in Los Angeles, California.

10.     Defendant Nested Bean, Inc. is a Delaware Corporation headquartered at 131 Coolidge Street, Suite 102, Hudson, MA 01749.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from Defendant's citizenship; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant operates,

conducts, and engages in substantial business in this judicial district, including but not limited to the promotion, sale, marketing and distribution of its Weighted Sleep Products; Defendant committed tortious acts in this State through its misrepresentations related to the sale, marketing, and distribution of the Weighted Sleep Products in this State; Defendant caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State, given Defendant is headquartered in Massachusetts.

13.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. This is especially true given Defendant is headquartered in Massachusetts.

**FACTUAL ALLEGATIONS**

**A.      Weighted sleep products, like Defendant's, are neither effective nor safe.**

14.     There is a scientific consensus around weighted sleep products like the ones sold by Defendant's: there is no evidence that they work, and they are unsafe to use.

15.     The AAP has addressed the topic of weighted sleep blankets, sleep sacks, and swaddles on numerous occasions. In 2022, the AAP stated this explicitly in its report: *Sleep-Related Infant Deaths: Updated 2022 Recommendations for Reducing Infant Deaths in the Sleep Environment*:[1]



16.     In 2023, the AAP reaffirmed this recommendation in a letter to the CPSC, writing

---

[1] https://publications.aap.org/pediatrics/article/150/1/e2022057990/188304/Sleep-Related-Infant-Deaths-Updated-2022?autologincheck=redirected

4

that weighted sleep products dangerously reduce oxygen levels for children using the products:[2]

> There is no evidence in the peer-reviewed scientific literature evaluating the safety of weighted sleep products on typical, healthy infants, and there is also nothing published regarding their use in an unmonitored setting. Even preliminary, non-peer-reviewed data under discussion in ASTM International proceedings suggest these products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain. A lack of substantial evidence about the possible harms of weighted sleep products should not serve as evidence that they do not cause harm.

17.    The AAP ended its letter with a warning that the CPSC should not allow a repeat of history in allowing unsafe sleep products to harm children:

> Parents expect that products available for purchase at reputable retailers are thoroughly tested for safety. CPSC and ASTM International should both take a precautionary approach to these and other novel infant sleep products to avoid a repeat of what happened with inclined sleepers, in-bed sleepers, and other novel sleep-related products. These products ultimately were associated with over 100 infants' deaths—all of which would have been prevented if these products were not kept on the consumer market. Waiting for the emergence of confirmatory data about these concerns while these products proliferate is an unacceptable outcome when each of those data points will be a family whose lives are forever marked by unfathomable tragedy of their infant dying from a sleep-related death.
>
> The AAP urges you to conduct vigorous oversight on all weighted sleep products, especially those marketed for infants and children. Thank you for this opportunity to comment on this important issue and for your work to better protect children from dangerous products. If the AAP can be of any further assistance, please do not hesitate to contact Zach Laris in our Washington, D.C. office at 202/347-8600 or zlaris@aap.org.
>
> Sincerely,
>
> Sandy L. Chung, MD, FAAP
> President
>
> SC/zml

18.    Likewise, on its Safe to Sleep website, the National Institutes of Health warn against putting weighted items in a crib with a baby:[3]

---

[2] https://www.documentcloud.org/documents/23849624-aap-letter-61523
[3] https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment

## Can I put a pillow, blanket, or a favorite toy in baby's sleep area?

Even though a crib with nothing in it except a fitted sheet covering the mattress may seem bare, it is the safest option for baby.

Things in the sleep area can pose dangers for baby, especially if they are:

- Soft or squishy (e.g., pillows, stuffed toys, crib bumpers)
- Under or on top of baby (e.g., comforters, quilts, blankets, positioners)
- Non-fitted, even if they are lightweight, small, or "tucked in" (e.g., loveys/cloths, non-fitted sheets, tucked-in blankets)
- Weighted (e.g., weighted blankets, weighted swaddles)

Research also links crib bumpers and bedding other than a fitted sheet covering the baby's mattress to serious injuries and deaths from SIDS, suffocation, entrapment, and strangulation.

Keeping these things out of baby's sleep area is the best way to avoid these dangers.

19.    The Center for Disease Control has come to the same conclusion:[4]

- Keep soft bedding such as blankets, pillows, bumper pads, and soft toys out of your baby's sleep area. Additionally, do not cover your baby's head or allow your baby to get too hot. Some parents may feel they should add sheets or blankets to their baby's crib to help keep their baby warm and comfortable while sleeping. However, sheets, comforters, and blankets can increase the risk of suffocation or overheat your baby. If you're worried about your baby getting cold during sleep, you can dress them in sleep clothing, like a wearable blanket, also known as a sleep sack. Weighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants. In a Pediatrics report [↗] , CDC scientists found that using soft bedding was associated with 16 times the risk of explained suffocation, compared with no soft bedding use.
- Learn how to create a safe sleep environment for baby in your home by exploring an Interactive Safe Sleep Environment Tool from Safe to Sleep [↗] ®.

20.    In an interview with the Washington Post, Dr. Rachel Moon, the co-chair of the American Academy of Pediatrics task force on Sudden Infant Death Syndrome, explained why weighted blankets, swaddles and sleep sacks were so dangerous to children: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there. **It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there**." (emphasis added).[5]

21.    These warnings from the scientific community led to Senator Richard Blumenthal

---

[4] https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/index.html#:~:text=Weighted%20products%20such%20as%20weighted,with%20no%20soft%20bedding%20use.
[5] https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/

to write to Defendant, asking it to address the "company's decision to continue selling these products to vulnerable and unsuspecting parents who are sleep-deprived, stressed and desperate for help, all while lacking reputable research to back the safety of these items."[6]

22.    The CPSC has taken notice of the scientific community's consensus and issued its own warnings and declarations about the safety, or lack thereof, of Defendant's Weighted Sleep Products.

23.    On its "Safe Sleep – Cribs and Infant Products" website, the CPSC is explicit in recommending that parents avoid using weighted blankets or weighted swaddles with their children:[7]

**Remember CPSC's "dos and don'ts" for baby sleep spaces**

**Many young babies cannot lift their heads to pull away from soft objects that can pose a suffocation risk,** such as bumpers, blankets, pillows, and sleep positioners. Also, a seated or semi-reclined position can cause your baby's head to tip forward and their airway to be blocked.

Follow these simple tips to make every sleep a safe sleep:

DO:

- **Do** use products intended for sleep including cribs, bassinet, play yard and bedside sleepers that meet federal requirements.
- **Do** remember **"Bare is Best"** - nothing but a fitted sheet in a crib, bassinet or play yard.
- **Do** always place baby on their back.
- **Do** move your baby to their crib, bassinet, or play yard if they fall asleep elsewhere.
- **Do** check our website for recalls (SaferProducts.gov) and sign up to receive recall notifications

DON'T:

- **Don't** add pillows or blankets to your baby's sleep space.
- **Don't use weighted blankets or weighted swaddles\*.**
- **Don't** allow your baby to sleep in an inclined product with an angle greater than 10º such as a rocker, bouncer or glider.
- **Don't** leave your baby unsupervised in products that aren't designed for safe sleeping, such as any inclined product.

*Inclined products, such as rockers, gliders, soothers and swings, should never be used for infant sleep.*
*\*NIH.gov and CDC.gov*

24.    On April 15, 2024, Commissioner Richard Trumka Jr. wrote to retailers, urging them to stop sales of these products:

---

[6] 12.06.23 - Nested Bean - Weighted Sleep Products Letter (senate.gov)
[7] Safe Sleep – Cribs and Infant Products | CPSC.gov



UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

STATEMENT OF
COMMISSIONER RICH TRUMKA JR.

April 15, 2024

**BEWARE: WEIGHTED INFANT SWADDLES AND BLANKETS ARE
UNSAFE FOR SLEEP;
RETAILERS SHOULD CONSIDER STOPPING SALES**

CPSC has a clear warning for safe infant sleep: "**Don't** use weighted blankets or weighted swaddles" for your babies.[1]  This matches the warnings from the National Institutes of Health (NIH) that weighted products "can pose dangers for babies," and from the Centers for Disease Control and Prevention (CDC) that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."[2]

There are multiple infant deaths in these products.  As the co-chair of the American Academy of Pediatrics' (AAP's) task force on Sudden Infant Death Syndrome (SIDS), Dr. Rachel Moon, explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there.  It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."[3]

AAP also cites risks to babies' brain development, stating that "there is evidence that the use of weighted sleep products on infants can lead to lower oxygen levels, which . . . may be harmful to the developing infant's brain."[4]

25.     Retailers saw theses warnings and took action, with companies such as Amazon, Walmart, and Target, pulling Defendant's Weighted Sleep Products and similar items from their shelves.[8]

26.     Amazon's policy for the weighted sleep infant products is explicit in the company's reasoning for pulling the products – Amazon does not believe these products are safe:

---

[8] https://www.npr.org/2024/05/02/1248194639/weighted-infant-sleepwear-amazon-target-safety

amazon seller central

This article applies to selling in: **United States**

Seller Central Help › Policies, agreements, and guidelines › Program Policies › Selling on Amazon fee schedule ›
Category, product, and listing restrictions › Product compliance › Weighted infant sleep products

# Weighted infant sleep products

On this page
Products covered by this policy
Our policy for weighted infant sleep products
Resources

If you list products on Amazon, you must comply with all applicable laws, regulations, standards, and our policies related to those products and product listings.

## Products covered by this policy

Swaddles, sleep sacks, and blankets that have been weighted (made heavier) and are marketed to infants.

## Our policy for weighted infant sleep products

Customers have to be confident that they'll find a selection of safe, reliable, and compliant products on Amazon. We don't allow the listing or sale of non-compliant or prohibited products. In the interest of safety, weighted infant sleep products are prohibited. Product listings for weighted infant sleep products will be removed if they:

- Refer to an infant, or use terms such as "baby," "newborn," "very young child," or "young child" in product detail page titles, descriptions, bullet points, or images; or
- Include images of an infant with the product; or
- Describes the use of weight in their use to aid in better infant sleep or use terms such as "self-soothing," "fall asleep fast," "deeper sleep" or "sleep longer" in product detail page titles, descriptions, bullet points, or images.

If you believe that your product has been incorrectly classified as prohibited, submit the following information to highrisk-childsafety@amazon.com:

27.     The decision by these major retailers to pull Defendant's Weighted Sleep Products and similar items from their shelves was met with approval from one CPSC commissioner, who noted that the retailers were "acting as responsible stewards of public safety [and] focusing on their customers' best interests" in stopping the sale of the items. That commissioner also noted that he had "sat with parents of a child who died in one of these products, and I carry their grief with me."[9]

28.     The AAP also cheered this decision, calling this a "strong first step" and noting that "[e]xhausted parents shouldn't have to become part-time product safety regulators, but our current system forces them to by allowing infant products onto the market without evidence they

---

[9] https://www.cpsc.gov/s3fs-public/Trumka_Statement_Weighted_Infant_Products_4_26_24_with_attachments.pdf?VersionId=iK5EDmatuGu9_z2jKt8t8BaWndFKwWCh

are safe."[10]

**B.      Defendant sells Weighted Sleep Products that it claims to safely help children and toddlers sleep.**

29.      Defendant manufactures, markets, and sells several substantially similar Weighted Sleep Products in both swaddle and sleep sack varieties.

30.      It promotes its Weighted Sleep Products as "[s]elf-soothing sleepwear that mimics your touch even after you leave the room."[11]



31.      Defendant says that its Weighted Sleep Products are "[l]ightly weighted to help your little one sleep easier."[12]

32.      Defendant explains the "science" behind its products as triggering the "Cuddle Effect," a term it has trademarked.

---

[10] https://publications.aap.org/aapnews/news/28768/AAP-leaders-call-decision-to-pull-harmful-weighted.
[11] https://www.nestedbean.com/ (last accessed May 10, 2024).
[12] https://www.nestedbean.com/pages/zen-sleepwear (last accessed May 10, 2024).



33.     "Only Nested Bean sleepwear is designed to mimic your touch and extend the Cuddle Effect," Defendant states, saying its Weighted Sleep Products mimic the gentle pressure children feel when parents naturally hold them.[13]

34.     Defendant goes out of its way to market these products as scientifically designed, stating that its Weighted Sleep Products are "recommended by certified sleep consultants," "[t]houghtfully designed and rigorously tested," and "[d]esigned with guidance from the Human Factors experts."[14]



35.     Defendant markets the products as helping children sleep more soundly while

---

[13] https://www.nestedbean.com/pages/the-cuddle-effect (last accessed May 10, 2024).
[14] https://www.nestedbean.com/pages/zen-sleepwear (last accessed May 10, 2024).

wearing the Weighted Sleep Products.

36.     Defendant also has an entire section on its website discussing the "Safety" of its products, proudly proclaiming that it puts "safety front & center."



37.     Among its many claims, Defendant states that its product is "[s]afety-tested by industry standards" designed for "[o]ptimal breathability," and as having "Healthy Outcomes."[15]

38.     Even when the safety and effectiveness of its Weighted Sleep Products were called into question, Defendant doubled down and claimed that "[o]ur products are helping a lot of babies and parents…[t]hose who have used [them] swear by our products."[16]

**C.     Defendant's marketing of its Weighted Sleep Products is misleading to the reasonable consumer.**

39.     By selling Weighted Sleep Products that are "lightly weighted to help your little one sleep easier" and which put "safety front & center," Defendant is representing to consumers

---

[15] https://www.nestedbean.com/pages/safety (last accessed May 10, 2024).
[16] https://www.npr.org/2023/07/27/1190263995/weighted-infant-sleepwear-safety.

that these products help children sleep better and are safe for use.

40.     When parents of young children, desperate for a good night's sleep, read about Defendant's products, they believe the Weighted Sleep Products will safely help children sleep better when using them. No reasonable consumer would read Defendant's website and think that that Weighted Sleep Products are actually unsafe and ineffective.

41.     Moreover, consumers cannot reasonably uncover the ineffective and dangerous nature of the Weighted Sleep Products with a reasonable investigation at the time of purchase. Consumers do not realize that, even when the Weighted Sleep Products are used as intended, they can create an unreasonable risk of asphyxiation and fatal harm in children. They reasonably expect that Defendant—who has far greater expertise in product safety, and who is made aware of the scientific literature detailed above—would not market a product that was unsafe and ineffective. To lay consumers who are not experienced in product design, the Weighted Sleep Products appear safe.

42.     Defendant does not put consumers on notice of the dangers posed by the Weighted Sleep Products.  Defendant could have warned consumers about the dangers presented by its products, but in fact, it does the opposite. It explicitly states that its products are safe.

43.     Thus, consumers are left unaware about the dangers presented by the Weighted Sleep Products at the time of purchase.

44.     As a manufacturer of consumer products, Defendant is responsible for the design and safety testing of its Weighted Sleep Products.

45.     Yet, Defendant did nothing to disclose the dangers presented by its Weighted Sleep Products to consumers.

46.     In short, Plaintiff and class members purchased a dangerous product that is

unusable for its intended central purpose: to help children sleep safely and soundly.

**D.    Defendant's Weighted Sleep Products are worthless.**

47.    The misrepresentations and omissions made by Defendant in regard to its Weighted Sleep Products is highly material to reasonable consumers. Consumers buy Weighted Sleep Products because they believe those products are safe and will help their children sleep.

48.    No reasonable consumer would purchase Weighted Sleep Products if they knew those products are ineffective and unsafe to use.

49.    If consumers knew the truth—that Defendant's Weighted Sleep Products do not work and are unsafe to use—the price of the Weighted Sleep Products would crater. In fact, Weighted Sleep Products that do not work and are unsafe to use are wholly worthless to consumers. Thus, the full economic injury here is the entire price of the Weighted Sleep Products purchased by Plaintiff and the class members.

50.    Plaintiff and class members were deprived the full benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

**E.    Ms. Saedi was misled and harmed by Nested Bean's deceptive marketing.**

51.    On February 14, 2024, Ms. Saedi purchased a Zen Sack Classic, one of Defendant's Weighted Sleep Products, from Defendant's website.

52.    Ms. Saedi used the sleep sack on her child twice but found that her baby was very uncomfortable and fussy while wearing the Weighted Sleep Product.  To Ms. Saedi, it appeared as though that her child was having a hard time breathing while wearing the Weighted Sleep Product as instructed.  Given this, Plaintiff stopped using the Zen Sack Classic she purchased after just two times.

53.    Ms. Saedi bought the Weighted Sleep Product because she believed that it would safely help her child sleep. She read and relied on Defendant's marketing materials to this effect.

14

She would not have purchased the Weighted Sleep Product at the price she paid, if she knew it did not help her child sleep. In fact, knowing the truth, the Weighted Sleep Product is worthless to her. The economic injury she suffered is the entire purchase price she paid for the Weighted Sleep Product.

54.     Before purchasing the Weighted Sleep Product, Ms. Saedi did not and could not have known that the Product suffered from significant defects. Reasonable consumers with no special knowledge of product design or safety testing must rely on manufacturers' representations of safety when deciding to purchase a product, and Defendant explicitly marketed its Weighted Sleep Products as safe to use. Had Ms. Saedi known the truth, she would not have purchased the Product. Likewise, if the truth were known, other consumers would not buy Weighted Sleep Products either, which would drive down the demand for, and consequently the price of, the Products. So apart from purchasing something she would not have bought at all, Ms. Saedi also overpaid for the Product.

55.     Thus, Ms. Saedi suffered economic injury as a direct result of Defendant's actions.

56.     Ms. Saedi would purchase a product that was proven to help her child sleep and was safe to use. Ms. Saedi, however, faces an imminent threat of harm because she will not be able to rely on representations of efficacy and safety in the future, and thus will not be able to purchase a Weighted Sleep Product.

**F.      Defendant breached its contract with and warranties to Ms. Saedi.**

57.     Ms. Saedi and other class members entered contracts with Defendant when they purchased Weighted Sleep Products. Defendant offered to provide Weighted Sleep Products that were safe for ordinary use, free from safety defects, and helped children sleep, for an advertised price. Ms. Saedi and other class members accepted this offer by purchasing Weighted Sleep Products.

58.     By selling the Weighted Sleep Products, Defendant warranted that the Products were free from safety defects and fit and safe for their intended use. These were material terms of the contract.

59.     Ms. Saedi and other class members performed their obligations under the contract by paying for the items that they purchased.

60.     Defendant breached its contract and warranties by failing to provide Plaintiff and other class members with Weighted Sleep Products that were safe for their intended use, free from defects, and which actually helped children sleep.

**G.     Defendant's actions injured other members of the putative class.**

61.     Defendant's material omissions, false representations, and failure to warn consumers about the dangers of its Weighted Sleep Products, allowed Defendant to charge more for the Products than it could have had the safety defects and Products' ineffectiveness been disclosed to consumers. Consumers, like Ms. Saedi, would not have bought the Weighted Sleep Products or, at minimum, would have paid substantially less for them if they knew the Products were unsafe and not proven to be effective. Stated another way, demand for Weighted Sleep Products would plummet if Defendant disclosed the dangers and shortcomings of the Products. As a result of Defendant's omissions and misrepresentations, Plaintiff and class members were charged a price premium and sustained economic injuries.

62.     Consumers purchase Defendant's Weighted Sleep Products because they think they are safe and will help their children sleep. Instead, Defendant's Weighted Sleep Products endanger children and are not proven to be effective. Therefore, the Products Plaintiff and class members received in exchange for their purchase price are worthless. The economic injury suffered by Plaintiff and the class members is the entire purchase price of the Weighted Sleep Products because they were unsafe and useless for their intended purpose.

**H.      No adequate remedy at law.**

63.      Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

64.      A legal remedy is not adequate if it is not as certain as an equitable remedy.

65.      To obtain a full refund as damages, Plaintiff must show that the products they received have essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased products that she would not otherwise have purchased, but for Defendant's misrepresentations.  Obtaining a full refund by law is less certain than obtaining a refund in equity.

66.      Also, winning damages under the CLRA requires additional showings not required under the UCL and FAL.  For example, to obtain damages under the CLRA, Plaintiff must prove that she complied with the CLRA's notice requirement.  No such requirements exist to obtain restitution.  In addition, the CLRA prohibits only particular categories of deceptive conduct.  By contrast, the UCL broadly prohibits "unfair" conduct and is thus broader.

67.      By the same token, Plaintiff's common law claims require additional showings, compared to her UCL, FAL, or unjust enrichment claims.  For example, to prevail on her breach of warranty claim, Plaintiff needs to show that the statements they challenge constitute a warranty and that the warranty was part of the basis of the bargain.  No such showings are required by the UCL or FAL, or for an unjust enrichment theory.  In fact, the UCL and the FAL were enacted specifically to create new claims and remedies not available at common law.  And unjust enrichment exists in part because contractual claims are often more difficult to establish.  In this way, Plaintiff's UCL and FAL claims, and Plaintiff's unjust enrichment claims, are more certain than her legal claims.

68.      Finally, the remedies at law available to Plaintiff are not equally prompt or

otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ALLEGATIONS

69.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

70.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of the following Class and Subclasses:

**Nationwide Class.**  All individuals who purchased a Weighted Sleep Product from Defendant Nested Bean, Inc., for personal, family, or household use within the applicable statutes of limitations.

**Multistate Subclass.**  All individuals who purchased a Weighted Sleep Product in California, Connecticut, Illinois, Maryland, Missouri, and New York for personal, family, or household use within the applicable statutes of limitations.

**California Subclass.**  All individuals who purchased a Weighted Sleep Product in California for personal, family, or household use within the applicable statutes of limitations.

71.   Plaintiff represents, and is a member of, this Class and Subclasses.

72.   Excluded from the Class and Subclasses are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, as well as claims for personal injury or wrongful death.

73.   Plaintiff reserves the right to amend or modify the Class and Subclasses definitions after having an opportunity to conduct discovery.

74.   The Class and Subclasses meet the criteria for certification under Rule 23(a), (b)(2), (b)(3), and (c)(4). Plaintiff and all members of the Class have been harmed by the acts of the Defendant. Class-wide adjudication of Plaintiff's claims is appropriate because Plaintiff can prove

the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

75.     ***Numerosity***. The members of the Class and Subclasses are so numerous that individual joinder of all class members is impracticable. Although the exact number of members is unknown at this time, it can readily be determined from the internal business records of Defendant or the retailers and distributors of the Weighted Sleep Products, and Class members may be notified of the pendency of this action by published and/or mail/emailed notice. Plaintiff reasonably estimates that there are hundreds of thousands of members of the Class.

76.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all members of the putative class that will drive the litigation and predominate over any questions affecting only individual class members. Common questions include, but are not limited to:

a.   Whether Defendant's Weighted Sleep Products improve sleep for children;

b.   Whether Defendant's Weighted Sleep Products are safe for children;

c.   Whether Defendant's Weighted Sleep Products are fit for their ordinary and intended use;

d.   Whether Defendant's Weighted Sleep Products are fit for their particular purpose;

e.   Whether Defendant committed a breach of an express or implied warranty;

f.   Whether Defendant engaged in an unlawful deceptive practice in marketing and selling the Weighted Sleep Products as they are;

g.   Whether Defendant was unjustly enriched by the sale of the Weighted Sleep Products;

h.   Whether Plaintiff suffered ascertainable loss as a result of Defendant's conduct;

i.   Whether Defendant should be enjoined from further sales of the Weighted Sleep Products;

j.   What damages are needed to compensate Plaintiff and the proposed classes;

k.   Whether Defendant violated consumer protection statutes.

77.     ***Typicality.*** Plaintiff's claims are typical of the claims of each putative class member and are based on the same facts and legal theories as each of the class members. Plaintiff, like all members of the Class, purchased one of Defendant's Weighted Sleep Products. Plaintiff, like all Class members, were thus subject to Defendant's common misrepresentations and omissions regarding the efficacy and safety of its products, which misleadingly and deceptively claim that the Weighted Sleep Products had value by purportedly helping children sleep and that the products were safe.  Plaintiff is entitled to relief under the same causes of action as the other members of the putative class.

78.     ***Adequacy of Representation.***  Plaintiff is an adequate representative of the putative Class and Subclasses because their interests coincide with, and are not antagonistic to, the interests of the members of the Class that they seek to represent. Plaintiff has retained counsel competent and highly experienced in complex consumer class action litigation, who intend to prosecute the action vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

79.     ***Superiority.*** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all

parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs. Plaintiff is not aware of any other current pending litigation against Defendant to which any Class member is a party involving the subject matter of this suit, and the Action presents no difficulties that will impede its management by the Court as a class action.

80.    ***Injunctive Relief Appropriate for the Class.***   Class certification is appropriate because Defendant has acted on grounds generally applicable to the entire Class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to Plaintiff and putative Class members. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that could establish incompatible standards of conduct for Defendant. Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant including Defendant's continued sale of its dangerous and worthless Weighted Sleep Products.

## CLAIMS FOR RELIEF

81.    Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## COUNT I
### Breach of Contract
### On behalf of Plaintiff and the Nationwide Class

82.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

83.    Plaintiff brings this count individually and for the Nationwide Class.  Common law breach of contract claims are materially similar in all fifty states.  In the alternative, Plaintiff brings

this claim under California law for herself and members of the California Subclass.

84.    Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Weighted Sleep Products on Defendant's website.  A valid contract existed between Plaintiff (and the class) and Defendant.

85.    The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

86.    The contracts further required that Defendant provides Plaintiff and class members with Weighted Sleep Products that conformed to the description advertised on the website and that was free of defects.  These were specific and material terms of the contracts.

87.    Plaintiff and class members paid Defendant for the Weighted Sleep Products they ordered, and satisfied all other conditions of their contracts.

88.    Defendant breached the contracts with Plaintiff and class members by failing to provide Products that conformed to the description advertised on the website.  Defendant breached its contract by providing Products that were defective, as described more fully above.

89.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

**COUNT II**
**Breach of Express Warranty**
**On behalf of Plaintiff and the Nationwide Class**

90.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

91.    Plaintiff brings this count on behalf of herself and the Nationwide Class. Common law breach of express warranty claims are materially similar in all fifty states.  In the alternative,

Plaintiff brings this claim under California law for herself and members of the California Subclass.

92.     Defendant, as the manufacturer, marketer, and seller of Weighted Sleep Products, issues material written warranties by representing that the products help children sleep and are safe to use. These are affirmations of fact about the Weighted Sleep Products and promises relating to the goods.

93.     These warranties were part of the basis of the bargain and Plaintiff and the Class relied on this warranty.

94.     However, the Weighted Sleep Products do not conform to the above-referenced representations because, as alleged in detail above, the Weighted Sleep Products do not help children sleep and are not safe to use. Thus, the warranties were breached.

95.     Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on May 14, 2024.  Defendant also had notice of this breach through the countless news articles and letters from the scientific community and government agencies stating the products were unsafe and ineffective.

96.     Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because: (a) they would not have purchased Weighted Sleep Products if they had known that the Products were ineffective and/or unsafe or (b) they received products that were, in truth, worthless.

**COUNT III**
**Breach of Implied Warranty of Fitness**
**On behalf of Plaintiff and the Nationwide Class**

97.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

98.     Plaintiff brings this count on behalf of herself and the Nationwide Class. Common law implied warranty of fitness claims are materially similar in all fifty states.  In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

99.     The Uniform Commercial Code Sec. 2-315 states where a seller has "reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is…an implied warranty that the goods shall be fit for such purpose."

100.     Plaintiff and members of the Nationwide Class purchased Weighted Sleep Products for the particular purpose of helping their children sleep safely, and Defendant knew or should have known this.

101.     Defendant marketed itself as a knowledgeable and effective developer, manufacturer, and seller of sleep products for children.

102.     Defendant knew or should have known that Plaintiff and members of the Nationwide Class would justifiably rely on Defendant's particular skill and knowledge of baby sleep products when choosing to purchase the Weighted Sleep Products.

103.     Plaintiff and members of the Nationwide Class did justifiably rely on Defendant's purported judgment and skill.

104.     But the Weighted Sleep Products were not suitable for their intended purpose, as they neither helped children sleep nor were safe to use.

105.     Defendant thus breached its implied warranty of fitness concerning the products and knew of this breach through countless news articles and letters from the scientific community and government agencies stating the products were unsafe and ineffective.

106.     Plaintiff provided Defendants with notice of this breach of warranty, by mailing a

24

notice letter to Defendants' headquarters, on May 14, 2024.  Defendant also had notice of this breach through the countless news articles and letters from the scientific community and government agencies stating the products were unsafe and ineffective.

107.    Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because: (a) they would not have purchased Weighted Sleep Products if they had known that the Products were ineffective and/or unsafe or (b) they received products that were, in truth, worthless.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**On behalf of Plaintiff and the Nationwide Class**

108.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

109.    Plaintiff brings this count on behalf of herself and the Nationwide Class. Common law implied warranty of merchantability claims are materially similar in all fifty states.  In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

110.    The Uniform Commercial Code Sec. 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Merchantable goods must be "fit for the ordinary purposes for which the goods are used."

111.    As alleged above, Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website. A valid contract existed between Plaintiff (and the class) and Defendant.

112.    Defendant is and was at all times a merchant with respect to its Weighted Sleep Products for children, and the products constitute goods under the UCC.

113.    Plaintiff and members of the Nationwide Class purchased the Weighted Sleep Products.

114.    Defendant, as the manufacturer, marketer, and seller of the Weighted Sleep Products impliedly warranted to Plaintiff and the Class that the products were of merchantable quality and were safe for their ordinary use.

115.    In fact, the Weighted Sleep Products were never in merchantable condition and were not fit for children to use while sleeping. Specifically, the Weighted Sleep Products were unsafe in that they restricted oxygen flow to children wearing them. The Weighted Sleep Products are unsafe even when used according to Defendant's instructions.

116.    Moreover, the Weighted Sleep Products were never in merchantable condition because there was no evidence that they worked for their stated purpose, the help children sleep more soundly.

117.    Defendant breached the implied warranty of merchantability when it sold its Weighted Sleep Products.

118.    Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on May 14, 2024.  Defendant also had notice of this breach through the countless news articles and letters from the scientific community and government agencies stating the products were unsafe and ineffective.

119.    Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because: (a) they

would not have purchased Weighted Sleep Products if they had known that the Products were ineffective and/or unsafe or (b) they received products that were, in truth, worthless.

**COUNT V**
**Fraud**
**On behalf of Plaintiff and the Nationwide Class**

120.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

121.    Plaintiff brings this count on behalf of herself and the Nationwide Class. Common law fraud claims are materially similar in all fifty states.  In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

122.    As alleged above, Defendant made false representations to Plaintiff and Nationwide Class members when it said its Weighted Sleep Products were effective and safe to use.

123.    These representations were false.

124.    When Defendant made these misrepresentations, they knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

125.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

126.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weighted Sleep Products.

127.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

128.    Defendant also made materially misleading omissions concerning the efficacy and safety of its Weighted Sleep Products. Specifically, it concealed information related to the related to the risks of asphyxiation inherent in the Products.

129.    In deciding to purchase the Weighted Sleep Products from Defendant, Plaintiff and the Nationwide Class members reasonably relied on Defendant's omissions to form the mistaken belief that the Weighted Sleep Products were effective and safe to use.

130.    Defendant's conduct was knowing and intentional and intended to induce, and actually induced, Plaintiff and the Nationwide Class members to purchase the Weighted Sleep Products. Plaintiff and Nationwide Class members would not have purchased the products if they knew the products were unsafe. Class-wide reliance can be inferred because Defendant's omissions were material, i.e. a reasonable consumer would consider them important to their purchase decision.

131.    Defendant had a duty to disclose because it had superior knowledge and access to material facts about the Products' safety, and a reasonable consumer could not have expected or known that the Weighted Sleep Products were unsafe.

132.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Weighted Sleep Products if they had known that the products were unsafe and ineffective at helping children sleep, and (b) they received products that were, in truth, worthless.

133.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**
**Negligent Misrepresentation**
**On behalf of Plaintiff and the Nationwide Class**

134.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

135.    Plaintiff brings this count on behalf of herself and the Nationwide Class. Common law negligent misrepresentation claims are materially similar in all fifty states.  In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

136.    As alleged more fully above, Defendant made false representations to Plaintiff and Nationwide Class members when it said its Weighted Sleep Products were effective and safe to use.

137.    These representations were false.

138.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

139.    Defendant intended that Plaintiff and Nationwide Class members rely on these representations; Plaintiff and Nationwide Class members did in fact read and reasonably rely on them.

140.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weighted Sleep Products.

141.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

142.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Weighted Sleep Products if they had known that the products were unsafe and ineffective at helping children sleep, and (b) they received products that were, in truth, worthless.

**COUNT VII**
**Quasi-Contract Claim for Restitution ("Unjust Enrichment")**
**On behalf of Plaintiff and the Nationwide Class**

143.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

144.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. Common law quasi-contract claims are materially similar in all fifty states. Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (First Cause of Action) and Breach of Express Warranty claim (Fifth Cause of Action) on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

145.    As alleged in detail above, Defendants' false and misleading representations caused Plaintiff and the class to purchase wholly worthless Products.

146.    In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

147.    Plaintiff and the class seek restitution, and in the alternative, rescission.

**COUNT VIII**
**Violation of State Consumer Protection Acts**
**On behalf of Plaintiff and the Multistate Consumer Protection**
**Class**

148.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

149.    As alleged below, Plaintiff brings individual and subclass claims based on California law.  For the Multistate Consumer Protection Subclass, Plaintiff brings this count for violations of state consumer protection laws that are materially similar to the laws of California, including:

| State | Statute |
| --- | --- |
| California | Cal. Bus. & Prof. Code § 17200, and the following: *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

150.    Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires individualized reliance, or proof of defendant's knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

151.    As alleged in detail above, Defendant's misrepresentations are misleading to reasonable consumers in a material way.  Defendant's false and misleading marketing was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of class members.

152.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Weighted Sleep Products if they had known that the products were unsafe and ineffective at helping children sleep, and (b) they received products that were, in truth, worthless.

**COUNT IX**
**Violation of California's False Advertising Law & Prof. Code §§ 17500 & 17501 et. seq.**
**On behalf of Plaintiff and the California Subclass**

153.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

154.    Plaintiff asserts this count on behalf of herself and members of the California Subclass.

155.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

156.    Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

157.    As alleged more fully above, Defendant falsely advertised its products by falsely representing that its Weighted Sleep Products were safe to use and helped children sleep.

158.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Weighted Sleep Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weighted Sleep Products.

159.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

160.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Weighted Sleep Products if they had known that the products were unsafe and ineffective and (b) they received products that were, in truth, worthless.

**COUNT X**
**Violation of California's Consumer Legal Remedies Act**
**On behalf of Plaintiff and the California Subclass**

161.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

162.    Plaintiff asserts this count on behalf of herself and members of the California Subclass.

163.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

164.    Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

165.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

166.    As alleged more fully above, Defendant violated the CLRA by falsely representing that its Weighted Sleep Products were safe and effective.  Defendant knew or should have known through the exercise of reasonable care, that these statements were false and misleading.

167.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

168.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that its Weighted Sleep Products have the characteristic of being safe to use and effective in helping children sleep, when in reality neither is true.

169.    Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code by representing that Weighted Sleep Products offered for sale are of a particular standard, quality, or grade, if they are another.  Defendant represents that its Weighted Sleep

Products meet the standard of being safe to use and effective at helping children sleep, when in reality they do not.

170.    And Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violated this by advertising its Weighted Sleep Products as being fit for their intended purpose of helping children sleep, when in fact Defendant does not intend to sell the Products as advertised.

171.    Defendant's false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew or should have known through the exercise of reasonable care that these statements were inaccurate and misleading.

172.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Weighted Sleep Product.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weighted Sleep Products.

173.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

174.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Weighted Sleep Products if they had known that the products were unsafe and ineffective and (b) they received products that were, in truth, worthless.

175.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

176.    A CLRA venue declaration is attached.

**COUNT XI**
**Violation of California's Unfair Competition Law**
**On behalf of Plaintiff and the California Subclass**

177.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

178.    Plaintiff asserts this count on behalf of herself and members of the California Subclass.

179.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

180.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

***The Fraudulent Prong***

181.    As alleged in detail above, Defendant's representations that its Weighted Sleep Products promote sleep and are safe to use were false and misleading.  Its marketing is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

***The Unfair Prong***

182.    Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

183.    Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Unsafe Weighted Sleep Products have no public utility and in fact are a hazard to public safety. This injury was not outweighed by any countervailing benefits to consumers or competition. Dangerous and useless products only injure and harm consumers.

184.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's marketing is false and misleading. It is likely to deceive and did deceive reasonable consumers like Plaintiff.

185.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

186.    Defendant's conduct violated the public policy against false and misleading advertising, which is tethered to the CLRA and the FAL.

187.    For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Weighted Sleep Products.   In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weighted Sleep Products.

188.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

189.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Weighted Sleep Products if they had known that the products were unsafe and ineffective and (b) they received products that were, in truth, worthless.

**DEMAND FOR JURY TRIAL**

190.    Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on behalf of

herself and the class she seeks to represent against Defendant for:

- An order certifying the asserted claims, or issues raised, as a class action;

- An order appointing Plaintiff as a representative for the Nationwide Class, Multistate Subclass, and the California Subclasses, and appointing her counsel as lead counsel for the classes;

- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of Defendant;

- A declaration that Defendant's Weighted Sleep Products are unfit for ordinary purposes and pose a serious safety risk to consumers;

- An order enjoining Defendant from engaging in or continuing to engage in the manufacture, marketing, and sale of its Weighted Sleep Products; requiring Defendant to issue corrective actions including notification, recall, service bulletins, or replacement of the Weighted Sleep Products; and requiring Defendant to preserve all evidence relevant to this lawsuit and notify Weighted Sleep Product owners with whom it comes in contact of the pendency of this and related litigation;

- Nominal damages as authorized by law;

- Restitution as authorized by law;

- Pre- and post-judgment interest;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.


Dated: May 15, 2024                           Respectfully submitted,

                                              **BAILEY & GLASSER LLP**

                                              */s/ Elizabeth Ryan*
                                              Elizabeth Ryan
                                              Bar No. 549632
                                              eryan@baileyglasser.com
                                              176 Federal Street, 5th Floor
                                              Boston, MA 02110
                                              (617) 439-6730

Bart D. Cohen
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

/s/ *Zachary Arbitman*
Alan M. Feldman*
Zachary Arbitman*
George Donnelly*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

*Attorneys for Plaintiff*

*Pro Hac Vice Applications Forthcoming